*46
 
 OPINION OF THE COURT
 

 Simons, J.
 

 This appeal involves a zoning dispute in which the courts below have found that plaintiff Town of Orangetown wrongfully revoked defendants’ permit to develop real property in the Town. Defendants have obtained injunctive relief restoring the building permit and an award of substantial damages on a 42 USC § 1983 cause of action. We now affirm.
 

 I
 

 Defendant Bradley Industrial Park, Inc. is the owner of 34 acres of land located in the Town of Orangetown. It acquired the property in 1979 to construct a 184,000 square foot industrial building at an estimated cost of $3 million. Defendants John and Patrick Magee are the shareholders of the corporation. In 1980 defendants’ plans for the improvement were approved and the Building Inspector issued a permit. Defendants began clearing and developing the site shortly thereafter. The trial court found that defendants spent over $4 million on the improvements for the land and building before work was halted by the Town.
 
 [1]
 

 Although the permit was limited to "land clearing, footings and foundations,” the courts below determined that the permit entitled defendants to construct the entire building as long as the subsequent plans for the walls, ceilings and electrical wiring comported with the plans for the building already approved by the Town’s Building Inspector.
 

 As the work on the project progressed, organized resistance to it developed within the community. Ultimately, the opposition became so intense that the Town Supervisor directed the Building Inspector to revoke the defendants’ permit and on July 25, 1985 he did so. The Town subsequently amended its Zoning Code to preclude construction of commercial buildings
 
 *47
 
 on defendants’ land.
 
 [2]
 
 At trial, the Town offered a number of reasons for the revocation. The court concluded that most were not authorized by the Town’s ordinances and none were supported by the evidence. It found that the permit was revoked solely to satisfy political concerns.
 

 Defendants had erected a temporary building for use during the preliminary stages of construction and after the permit was revoked, the Town instituted this action to obtain an order compelling its removal. Defendants counterclaimed seeking (1) an order compelling reinstatement of the permit, and (2) damages pursuant to 42 USC § 1983. After a bifurcated trial, Supreme Court dismissed the complaint and entered a judgment in favor of defendants on their counterclaims ordering reinstatement of the building permit and awarding damages of $5,137,126, costs and attorney’s fees. The Appellate Division modified the judgment by remitting the question of attorney’s fees and otherwise affirmed. It subsequently granted the Town leave to appeal to this Court. Our review is controlled in large part by factual findings of the trial court, affirmed by the Appellate Division.
 

 II
 

 The CPLR Article 78 Claim
 

 In their first counterclaim defendants sought reinstatement of their building permit, alleging they had a "vested right” in the planned construction.
 

 In New York, a vested right can be acquired when, pursuant to a legally issued permit, the landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes and incurring substantial expenses to further the development (see,
 
 Matter of Putnam Armonk v Town of Southeast,
 
 52 AD2d 10, 14-15;
 
 see also, People ex rel. Ortenberg v Bales,
 
 250 NY 598,
 
 affg
 
 224 App Div 87;
 
 City of Buffalo v Chadeayne,
 
 134 NY 163, 165;
 
 Matter of Caponi v Walsh,
 
 228 App Div 86, 89). Neither the issuance of a permit (see,
 
 Matter of Sibarco Stas. v Town Bd.,
 
 24 NY2d 900;
 
 Rice v Van Vranken,
 
 132 Misc 82,
 
 affd
 
 225 App Div 179,
 
 affd
 
 255 NY 541;
 
 People ex rel. Ortenberg v Bales, supra)
 
 nor the landowner’s substantial improvements and expenditures, standing alone, will establish the right. The landowner’s actions relying on a
 
 *48
 
 valid permit must be so substantial that the municipal action results in serious loss rendering the improvements essentially valueless
 
 (see, People v Miller,
 
 304 NY 105, 109).
 

 There is no dispute that defendants’ permit was legally issued. Whether defendants had sufficiently committed the land to the use authorized by the permit prior to revocation is a question of fact and the determination of the courts below that they had is supported by evidence in the record
 
 (see, Matter of Caponi v Walsh, supra; see generally,
 
 1 Anderson, New York Zoning Law and Practice § 6.18, at 231 [3d ed]). Inasmuch as the permit was revoked for unlawful reasons, the revocation resulted in an unconstitutional deprivation of defendants’ property rights
 
 (see, People v Miller, supra).
 
 Accordingly, defendants are entitled to reinstatement of the building permit in conformity with the zoning ordinances in effect at the time of the revocation.
 

 ra
 

 The Civil Rights Claim
 

 Defendants’ second counterclaim asserted a cause of action under 42 USC § 1983 for damages suffered as a result of the Town’s actions. Defendants claimed that plaintiff’s actions resulted in an unconstitutional taking of their property and that the Town denied them substantive and procedural due process guaranteed by the United States Constitution.
 

 Section 1983 provides:
 

 "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State * * * , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress”.
 

 Municipalities are "persons” subject to suit under section 1983 for the deprivation of constitutionally protected rights caused by actions which "implement! ] or execute! ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers”
 
 (Monell v New York City Dept. of Social Servs.,
 
 436 US 658, 690;
 
 Pembaur v Cincinnati,
 
 475 US 469, 479-480). The municipality may not be held vicari
 
 *49
 
 ously liable under the doctrine of respondeat superior for employing a careless tortfeasor, however: the injury must arise from acts of municipal officers or employees in the course of executing municipal policy or custom
 
 (id).
 
 Liability may even be imposed for a single act, as long as it is the act of an official authorized to decide policy in that area
 
 (Pembaur, supra,
 
 at 480, 482-483;
 
 St. Louis v Praprotnik,
 
 485 US 112, 123-124;
 
 see also,
 
 Comer,
 
 Municipal Liability Under Section 1983: The Rationale Underlying the Final Authority Doctrine,
 
 44 Vand L Rev 341 [1991]).
 

 In the context of land use, section 1983 provides protection against municipal actions which violate a landowner’s rights under the Just Compensation Clause of the Fifth Amendment or the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Under the former, the claimant must establish that the governmental action amounts to a taking without just compensation. The Supreme Court has also identified, although not yet recognized, a substantive due process claim under the Fifth and Fourteenth Amendments based upon a regulatory taking, i.e., regulation of property that goes so far it has effectively destroyed the economic value of the property
 
 (see, Williamson Planning Commn. v Hamilton Bank,
 
 473 US 172, 185, 197-200).
 

 The trial court rested its decision on a third ground — that the acts of the Town in revoking defendants’ permit denied them substantive due process of law because the revocation and subsequent zoning change were arbitrary and capricious (156 Misc 2d 881, 893-895,
 
 supra; and see, Southview Assocs. v Bongartz,
 
 980 F2d 84, 96, 102 [2d Cir 1992],
 
 cert denied sub nom. Southview Assocs. v Individual Members of Vt. Envtl. Bd.,
 
 507 US 987 [1993];
 
 Brady v Town of Colchester,
 
 863 F2d 205, 215 [2d Cir 1988];
 
 Wheeler v City of Pleasant Grove,
 
 664 F2d 99 [5th Cir 1981];
 
 see generally,
 
 Stein,
 
 Regulatory Takings and Ripeness in the Federal Courts,
 
 48 Vand L Rev 1, 80 [1995]).
 
 [3]
 
 This type of claim challenges a particular land-use decision — here, the revocation of plaintiff’s building permit — as a single decision with its own consequences, rather than as one in a series of action — resulting in a taking
 
 (see, Harris v County of Riverside,
 
 904 F2d 497, 501,
 
 supra).
 
 The key factor in such cases is not whether the State was justified in depriving the in
 
 *50
 
 dividual of his or her property, but rather whether the State obeyed the strictures of the Constitution in doing so
 
 (see, Weissman v Fruchtman,
 
 700 F Supp 746, 756 [SD NY]).
 

 A
 

 Plaintiff’s Ripeness Defense
 

 In contesting the trial court’s determination, the Town first contends that the revocation was not "final” and therefore not ripe for judicial review, until reviewed by the Orangetown Zoning Board of Appeals. Defendants, on the other hand, assert that the Building Inspector constitutes a Town official with final policy-making authority and that requiring an appeal to the Town Zoning Board of Appeals would impose an impermissible exhaustion of remedies requirement on their section 1983 claim.
 

 Civil rights claims are not justiciable until the municipality has "arrived at a definitive position on the issue that inflicts an actual, concrete injury”
 
 (Williamson, supra,
 
 at 193;
 
 Matter of Ward v Bennett,
 
 79 NY2d 394, 400). This requirement reflects the reluctance of the courts to impose liability upon a municipality unless the liability arises from "acts which the municipality has officially sanctioned or ordered”
 
 (Pembaur, supra,
 
 at 480;
 
 Monell, supra,
 
 at 691;
 
 de St. Aubin v Flacke,
 
 68 NY2d 66, 75).
 

 The ripeness requirements for just compensation and regulatory "takings” claims differ from claims based upon arbitrary and capricious conduct. Under takings claims the contention is that the State has taken the property for a governmental purpose or that it has gone "too far” in exercising its police power to regulate property and thus deprived an owner of all economically beneficial use of the property
 
 (Pennsylvania Coal Co. v Mahon,
 
 260 US 393, 415;
 
 see, Northern Westchester Professional Park Assocs. v Town of Bedford,
 
 60 NY2d 492;
 
 French Investing Co. v City of New York,
 
 39 NY2d 587,
 
 cert denied
 
 429 US 990). Such claims are not ripe for judicial review until (1) the governmental entity charged with implementing the regulations has rendered a final decision regarding the application of the regulations to the property, and (2) the landowner has availed itself of the procedures provided by State law to obtain just compensation
 
 (Williamson, supra,
 
 at 194, 200;
 
 Southview, supra,
 
 at 96). Under this type of claim, a decision does not become ripe for review unless alternative uses of the property have been considered and rejected and it is thus
 
 *51
 
 established that the landowner has been deprived of its property. Until that has been done, it is not clear that a taking has occurred or how "far” the regulation goes.
 

 However, a substantive due process claim based on arbitrary and capricious conduct is subject only to the final decision requirement of the
 
 Williamson
 
 test. The decision must be final to be reviewable (else how could arbitrariness be judged), but it is unnecessary that the landowner pursue administrative remedies to determine how the regulation in question applies to the property or avail itself of State procedures for determining compensation (see,
 
 Southview Assocs. v Bongartz, supra,
 
 at 96-97). If the action of the municipality is arbitrary and capricious, the remedy for a violation is invalidation of the regulation and actual damages (see,
 
 Williamson, supra,
 
 at 197).
 

 There should be no confusion about the requirement that administrative remedies must be exhausted in some cases before judicial review is available and the requirement that an action must be final before it is ripe for judicial review. The finality requirement is concerned with whether an official authorized to make the determination has arrived at a decision that inflicts injury. The requirement that administrative review must be exhausted in some cases relates to the procedure by which a party injured by a decision may seek review and obtain a remedy if the decision is found to be unlawful
 
 (Williamson, supra,
 
 at 192-193;
 
 see also, Church of St. Paul & St. Andrew v Barwick,
 
 67 NY2d 510, 521). If the Building Inspector had the authority to make a final decision revoking defendants’ permit, requiring defendants to seek administrative review of his action by taking an appeal to the Zoning Board would impose an exhaustion requirement on their section 1983 action, a condition which is generally impermissible
 
 (see, Patsy v Florida Bd. of Regents,
 
 457 US 496;
 
 Williamson, supra,
 
 at 194, n 13;
 
 see generally,
 
 Stein,
 
 Regulatory Takings and Ripeness in the Federal Courts, op. cit,
 
 at 15; 1 Schwartz and Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees § 3.13, at 204-205 [2d ed]).
 

 "Whether the Building Inspector’s revocation constituted a "final decision” of the Town of Orangetown is a matter to be determined by examining the relevant local laws. States have broad discretion to determine the form of local government and the distribution of power in one locality may be quite different from that of another. Whether- an official has final authority to take municipal action in a given case is not a question of fact, but a question of State law
 
 (St. Louis v Prapro
 
 
 *52
 

 tnik, supra,
 
 at 124;
 
 Pembaur, supra,
 
 at 483;
 
 see generally,
 
 Stein,
 
 op. cit.,
 
 at 82).
 

 Under the ordinances of the Town of Orangetown, the Building Inspector had the statutory authority to effect a revocation of defendants’ building permit (Orangetown, N. Y., Zoning Code, ch 43, § 8.222 [1969]). He was the "initial decision-maker” vested by law with the exclusive and unfettered authority to decide the question of revocation
 
 (see, Williamson, supra,
 
 at 193) and he clearly had done so when he revoked defendants’ permit and halted work on the project. The Zoning Board was not authorized to revoke a permit or even participate in the Inspector’s decision to revoke. Its power was restricted to the review of the Inspector’s final decision. Thus, a determination by the Board was not necessary and defendants’ counterclaim for section 1983 relief is ripe for judicial review.
 

 B
 

 Defendants’ Section 1983 Claim
 

 To succeed on their claim for damages pursuant to 42 USC § 1983, defendants must establish (1) the deprivation of a protectable property interest (2) by one acting under the authority of law
 
 (Parratt v Taylor,
 
 451 US 527, 535).
 

 The hallmark of property "is an individual entitlement grounded in state law, which cannot be removed except 'for cause’ ”
 
 (Logan v Zimmerman Brush Co.,
 
 455 US 422, 430;
 
 Parratt v Taylor,
 
 supra;
 
 Matter of Deas v Levitt,
 
 73 NY2d 525, 531,
 
 cert denied
 
 493 US 933). In order to establish a protectable property interest in the building permit, defendants must show more than a mere expectation or hope to retain the permit and continue their improvements; they must show that pursuant to State or local law, they had a "legitimate claim of entitlement” to continue construction
 
 (Board of Regents v Roth,
 
 408 US 564, 577;
 
 Sullivan v Town of Salem,
 
 805 F2d 81, 84-85 [2d Cir 1986];
 
 Yale Auto Parts v Johnson,
 
 758 F2d 54, 59 [2d Cir 1985]).
 

 Defendants did so in this case by establishing that the rights to develop their land had become vested under State law. Moreover, as the courts below found, they unquestionably would have received the limited future authorizations necessary to complete the project. On this evidence, the Town had "engendered a clear expectation of continued enjoyment” of the permit sufficient to constitute a protectable property inter
 
 *53
 
 est for purposes of a section 1983 claim
 
 (Barry v Barchi,
 
 443 US 55, 64, n 11); there was a "certainty or a very strong likelihood” that defendants would have completed the project absent the deprivation of due process
 
 (see, Yale Auto Parts, supra,
 
 at 59).
 

 Having acquired a cognizable property interest, due process assures the defendants the right to be free from arbitrary or irrational municipal actions destructive of this interest
 
 (see, Arlington Hgts. v Metropolitan Hous. Corp.,
 
 429 US 252, 267;
 
 Southview Assocs., supra,
 
 at 96;
 
 Brady v Town of Colchester, supra,
 
 at 215). The municipality’s authority to regulate zoning rests upon the valid exercise of its police power and a decision regulating a landowner’s use of its property offends due process when the government acts with "no legitimate reason for its decision”
 
 (Shelton v City of Coll. Sta.,
 
 780 F2d 475, 483 [5th Cir], cert
 
 denied
 
 479 US 822;
 
 see, Euclid v Ambler Co., 272
 
 US 365, 395). The evidence in the record supports the trial court’s conclusion that the Building Inspector’s revocation of defendants’ permit was arbitrary and capricious in this case because it was without legal justification and motivated entirely by political concerns. The only remaining question is whether his actions may be imputed to the Town of Orangetown.
 

 The Town Zoning Code, which necessarily reflects Town policy, vests the Building Inspector, alone, with the authority to revoke building permits (Town of Orangetown Code, ch 43, § 8.222). The Building Inspector therefore implements Town policy and the Town, by enacting the legislation, accepted the possibility that he would exercise this authority in an arbitrary and capricious manner. While the municipality might not be liable if the Building Inspector acted in a good faith or mistaken understanding of the law
 
 (see, Brady v Town of Colchester, supra,
 
 at 216) or if his act was a random act of personal ill will not authorized by the Town
 
 (see, Monell,
 
 supra;
 
 Pembaur, supra),
 
 that clearly was not the case here. He exercised his legal authority for political reasons at the direction of the Town Supervisor.
 

 Accordingly, defendants successfully established a claim for damages pursuant to 42 USC § 1983, based on the Building Inspector’s arbitrary and irrational revocation of their building permit.
 

 
 *54
 
 IV
 

 Damages
 

 Finally, the plaintiff maintains that the damages were incorrectly computed and the award excessive.
 

 Plaintiffs experts conceded during trial that defendants had sustained substantial damages. Moreover, they agreed that the damages could be measured by implementing the so-called
 
 Wheeler
 
 formula
 
 (see, Wheeler v City of Pleasant Grove,
 
 833 F2d 267, 271 [11th Cir 1987]
 
 [Wheeler
 
 III]; see
 
 also,
 
 664 F2d 99
 
 [Wheeler I],
 
 supra; 746 F2d 1437
 
 [Wheeler
 
 II]; 896 F2d 1347, 1351
 
 [Wheeler IV]).
 
 In fact, the parties stipulated to a number of figures that could be used to compute the damages under that formula.
 

 In
 
 Wheeler,
 
 a case remarkably similar to this on the facts, the court established a method for determining the damages sustained by temporary governmental interference with a landowner’s beneficial use of property. It held that the loss takes the form of an injury to the property’s potential for producing income or an expected profit. The compensable interest is the return on the portion of fair market value that is lost as a result of the government’s action. Accordingly, the landowner should be awarded the market rate of return computed over the period of the taking on the difference between the property’s fair value without the restriction and its fair market value with the restriction
 
 (see,
 
 833 F2d 267, 271,
 
 supra).
 

 The parties to a civil dispute are free to chart their own course and, unless public policy is affronted, they may fashion the way a controversy is to be resolved or how damages are to be computed without interference by the courts
 
 (Mitchell v New York Hosp.,
 
 61 NY2d 208;
 
 Matter of Abramovich v Board of Educ., 46
 
 NY2d 450,
 
 cert denied 444
 
 US 845). While we express no view on the appropriateness of the
 
 Wheeler
 
 formula to measure damages in cases such as this, its use does not affront public policy and it was within the court’s discretion to compute the damages on the basis of the formula as the parties agreed it should.
 

 Implementing that formula, the Town stipulated to values for the building and the land before and after taking, the difference between the two numbers, the equity ratio and the market rate of return. The court determined other values based upon the evidence and directed the parties to compute the damages using the
 
 Wheeler
 
 formula and submit their determination. It based its final award on those submissions. Inasmuch
 
 *55
 
 as the figures used were either supported by evidence or agreed upon by the parties, there is no basis to interfere with the award.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, etc.
 

 [1]
 

 . In addition to the estimated cost of site and building improvements, the trial court found that defendants spent $250,000 on the purchase of the original site, approximately $123,000 purchasing additional acreage to satisfy Town requirements for access to public roads; that in response to community complaints about highway congestion, defendants spent approximately $250,000 developing an alternate route over a railroad crossing; defendants spent $100,000 for water and sewage lines; and in certain easement negotiations with the water company, defendant gave up rights in a self-contained water system on the property worth approximately $1 million.
 

 [2]
 

 . The facts are set out fully in the decision of Justice Stolarik reported at 156 Misc 2d 881.
 

 [3]
 

 . Some Federal courts analyze such claims as matters of procedural due process (see,
 
 Nasierowski Bros. Inv. Co. v City of Sterling Hgts.,
 
 949 F2d 890, 894 [6th Cir 1991];
 
 Harris v County of Riverside,
 
 904 F2d 497 [9th Cir 1990];
 
 Landmark Land Co. v Buchanan,
 
 874 F2d 717, 723 [10th Cir 1989]).