■ In the Matter of KEN MAR DEVELOPMENT, INC., Respondent, v DEPARTMENT OF PUBLIC WORKS OF THE CITY OF SARATOGA SPRINGS et al., Appellants. [862 NYS2d 202]—

Stein, J. Appeal from a judgment of the Supreme Court (Nolan, Jr., J.), entered May 16, 2007 in Saratoga County, which, among other things, partially granted petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to compel respondents to remove certain impediments blocking petitioner's access to certain real property.

Petitioner owns property in the City of Saratoga Springs, Saratoga County, which was subdivided into four lots by resolution of the City's Planning Board in 1997. Lots one, two and three abut an improved street and have since been developed. Access to lot four, however, is solely by means of an unimproved "paper street."[1] The subdivision map approved by the City contains a note which provides that "[a]ccess to lot 4 will be across the undeveloped portion of Martin Avenue. Construction and maintenance of this driveway will be the responsibility of the owner of lot 4. Construction of that portion of the driveway that is in the public right of way is subject to the approval of the Department of Public Works."

---

1. The unimproved portion of Martin Avenue ends where it abuts lot four and, traveling along the paper street from lot four, the next intersecting street is the intersection of the improved portion of Martin Avenue with Bingham Street.

Beginning in 2003, petitioner proceeded with the development of lot four. A building permit was obtained in July 2006 and petitioner then began utilizing the paper street to access lot four "for the purposes of clearing, grading and excavating the area" where the approved building was to be constructed.

In August 2006, respondent Department of Public Works (hereinafter DPW), at the direction of respondent Thomas McTygue, the City's Commissioner of Public Works, parked a city-owned dump truck on the unimproved portion of Martin Avenue, thereby preventing access to and development of lot four.[2] In response, petitioner commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment seeking, among other things, (1) to compel removal of the City's dump truck[3] and to prevent respondents from impeding access to and development of lot four, and (2) declarations and damages pursuant to 42 USC § 1983 and the Equal Protection Clause of the NY Constitution. Respondents moved to, among other things, dismiss the complaint for failure to state a cause of action. Supreme Court denied respondents' motion to dismiss and, reaching the merits of the CPLR article 78 proceeding, granted the petition and enjoined respondents from interfering with petitioner's right to use the paper street to access lot four, including the construction of a driveway along the paper street. Respondents now appeal.

Turning first to the CPLR article 78 proceeding, we note that "[a]n owner of land adjoining a highway or street possesses, as an incident to such ownership, [an] easement[ ] of . . . access, from and over the highway in its entirety to every part of his or her land, regardless of whether the owner owns the fee of the highway or street itself" (*Matter of Scoglio v County of Suffolk*, 85 NY2d 709, 712 [1995]), even when it is but a paper street (*see Perlmutter v Four Star Dev. Assoc.*, 38 AD3d 1139, 1140 [2007]; *see also Fiebelkorn v Rogacki*, 280 App Div 20, 21-22 [1952], *affd* 305 NY 725 [1953]). Here, petitioner's use of the paper street to gain access to lot four in order to construct the

---

**2.** Respondents allege that the placement of the dump truck was in response to petitioner's removal of considerable amounts of trees, brush and grass from the paper street. However, according to petitioner, the paper street had been cleared since 2003 and petitioner's present intent is simply to traverse it—in its current condition—with construction equipment and/or other vehicles.

**3.** While the dump truck has since been removed, petitioner's access to lot four along the paper street has been limited by the City to foot traffic. Furthermore, it is evident from the record that McTygue intends to prevent petitioner from developing lot four—and, therefore, from accessing that property for such purpose—under any circumstances.

approved duplex, as well as the eventual construction of a driveway, is consistent with the purpose of such street (*see Perlmutter v Four Star Dev. Assoc.*, 38 AD3d at 1141; *Village of Baxter Estates v G.N.M. Constr. Co.*, 49 Misc 2d 333, 334 [1966]). Nonetheless, a reading of note two of the subdivision map, together with the minutes of the January 15, 1997 meeting of the City Planning Board, demonstrates petitioner's consent to DPW's authority to approve the construction of a driveway on the paper street and, hence, to impose reasonable requirements relative thereto. Although petitioner alleges that the efforts of its principals to approach McTygue on several occasions regarding the specifications required for the construction of the driveway were completely rebuffed, there is no record evidence that any specific applications or proposals were submitted and denied. Furthermore, questions of fact exist as to whether any further alteration of the land is necessary to enable petitioner to traverse the paper street with construction vehicles without constructing a driveway.

Thus, we find that respondents' blanket imposition of impediments to petitioner's use of the paper street to access its land was arbitrary and capricious and we agree with Supreme Court's determination that petitioner was entitled to judgment on its CPLR article 78 petition to the extent of enjoining respondents from interfering with such access. However, we disagree with Supreme Court's finding, on this record, that petitioner has an *unrestricted* right to construct a driveway on the paper street or to otherwise improve such street, as any determination with respect to the reasonableness of respondents' actions in this regard is premature.[4]

We next address respondents' claim that petitioner has failed to state causes of action sounding in constitutional violations. First, we find sufficient allegations to support municipal liability under 42 USC § 1983. The complaint, as supplemented by the affidavits of petitioner's president (*see Nonnon v City of New York*, 9 NY3d 825, 827 [2007]; *Leon v Martinez*, 84 NY2d 83, 88 [1994]), alleges the existence of an official policy that subjected petitioner to the denial of a constitutional right (*see Zahra v Town of Southold*, 48 F3d 674, 685 [2d Cir 1995]; *Town of Orangetown v Magee*, 88 NY2d 41, 48-49 [1996]; *Weimer v City of Johnstown*, 249 AD2d 608, 609 [1998], *lv denied* 92 NY2d 806 [1998]; *Howe v Village of Trumansburg*, 199 AD2d 749, 751

4. However, we note that respondents appear to concede that a street opening permit is not necessary at this time. We also note, as did Supreme Court, the absence of any evidence of the City's alleged ownership of the land on which the paper street is situated.

[1993], *lv denied* 83 NY2d 753 [1994]; *see generally* 42 USC § 1983; *Monell v New York City Dept. of Social Servs.*, 436 US 658, 690-695 [1978]). Specifically, there are allegations that McTygue had final policymaking authority in at least some of the areas of governmental function associated with petitioner's development of lot four. Accordingly, we find that petitioner adequately alleged both that McTygue was one "whose edicts or acts may fairly be said to represent official policy" and that the acts of the DPW at McTygue's direction could reasonably be viewed as manifestations of official policy such that municipal liability under 42 USC § 1983 may lie (*Monell v New York City Dept. of Social Servs.*, 436 US at 659; *see generally City of St. Louis v Praprotnik*, 485 US 112, 121-126 [1988]; *Pembaur v Cincinnati*, 475 US 469, 479-484 [1986]).

Turning next to petitioner's specific federal constitutional claims, petitioner asserts three claims pursuant to 42 USC § 1983 premised, respectively, upon an equal protection violation, a substantive due process violation and a taking without just compensation. First, we find that petitioner's takings claim pursuant to the Fifth Amendment of the US Constitution is premature. Petitioner has not presented any allegation or proof that compensation has been sought for its property and, therefore, its takings claim is not ripe for review and should be dismissed (*see Williamson County Regional Planning Comm'n v Hamilton Bank of Johnson City*, 473 US 172, 194-197 [1985]; *Villager Pond, Inc. v Town of Darien*, 56 F3d 375, 379-380 [2d Cir 1995], *cert denied* 519 US 808 [1996]).

Addressing, next, petitioner's equal protection claim, we note that an equal protection violation based upon selective enforcement "arises where first, a person (compared with others similarly situated) is selectively treated and second, such treatment is based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 631 [2004]; *see Matter of Northway 11 Communities v Town Bd. of Town of Malta*, 300 AD2d 786, 788 [2002]; *Cine SK8, Inc. v Town of Henrietta*, 507 F3d 778, 790 [2d Cir 2007]; *Zahra v Town of Southold*, 48 F3d at 683-684). Here, petitioner has not shown that it is similarly situated with those whose street access permits were granted. Thus, we find that petitioner has failed to state a legally cognizable federal equal protection claim.

With respect to its substantive due process claim, petitioner must allege (1) the deprivation of a protectable property interest and (2) that "the governmental action was wholly without

legal justification" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 627; *see Town of Orangetown v Magee*, 88 NY2d at 53). Considering that petitioner had obtained a valid building permit, and in view of our conclusion that respondents' interference with petitioner's access to lot four was improper, we find that petitioner has sufficiently pleaded "a 'legitimate claim of entitlement' to continue construction" (*Town of Orangetown v Magee*, 88 NY2d at 52, quoting *Board of Regents of State Colleges v Roth*, 408 US 564, 577 [1972]; *accord Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 627; *see Villager Pond, Inc. v Town of Darien*, 56 F3d at 379). In addition, petitioner has alleged that it has expended substantial sums to vest its interest. Consequently, we find that petitioner's property interest is sufficient to sustain a viable substantive due process claim. We also find that petitioner has sufficiently pleaded a lack of legal justification for respondents' actions. In fact, there is some evidence that, among other things, McTygue, together with the Deputy Commissioner of Public Works (McTygue's brother), had unilaterally decided to prevent development of lot four, regardless of the Planning Board's approval of a building permit.

We agree with respondents' contention that petitioner's cause of action asserting a violation of the Equal Protection Clause of the NY Constitution (*see* NY Const, art I, § 11) should have been dismissed. In our view, the injunctive and declaratory relief available to petitioner pursuant to CPLR article 78 provides an adequate alternative remedy, rendering the recognition of a constitutional tort unnecessary "to effectuate the purposes of the State constitutional protections [petitioner] invokes" (*Martinez v City of Schenectady*, 97 NY2d 78, 83 [2001]; *see Waxter v State of New York*, 33 AD3d 1180, 1181-1182 [2006]; *Bullard v State of New York*, 307 AD2d 676, 678-679 [2003]).

Finally, we also agree with respondents that petitioner's punitive damages claims against the municipal respondents should have been dismissed, as no claim for punitive damages lies against a governmental entity (*see Newport v Fact Concerts, Inc.*, 453 US 247, 266-270 [1981]; *Sharapata v Town of Islip*, 56 NY2d 332, 338-339 [1982]; *Miller v City of Rensselaer*, 94 AD2d 862, 862 [1983]). However, to the extent that petitioner asserts a claim for such damages against McTygue, individually, a viable punitive damages claim has been stated (*see Newport v Fact Concerts, Inc.*, 453 US at 269-270; *Sharapata v Town of Islip*, 56 NY2d at 338-339; *Miller v City of Rensselaer*, 94 AD2d at 862-863; *compare Ivani Contr. Corp. v City of New York*, 103 F3d 257, 262 [2d Cir 1997], *cert denied* 520 US 1211 [1997]; *see generally* General Municipal Law § 50-k [3]; *Smith v Wade*, 461 US 30, 56 [1983]).

Respondents' remaining contentions have been examined and found to be without merit.

Spain, J.P., Lahtinen, Kane and Malone Jr., JJ., concur. Ordered that the judgment is modified, on the law, without costs, (1) by reversing so much thereof as granted that part of the first cause of action of the petition giving petitioner an unrestricted right to construct a driveway on the paper street and (2) by dismissing the causes of action (a) asserting a taking without just compensation under the US Constitution, (b) asserting a violation of the Equal Protection Clauses of the NY Constitution and US Constitution and (c) seeking punitive damages against respondent Department of Public Works of the City of Saratoga Springs, respondent City of Saratoga Springs and respondent Thomas McTygue in his capacity as Commissioner of Public Works; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.